The PEOPLE of the State of Colorado, Complainant,

v.

Nancy Lee TAYLOR, Attorney–Respondent.

No. 90SA282.

Supreme Court of Colorado, En Banc.

Oct. 15, 1990.

Linda Donnelly, Disciplinary Counsel, Susan L. Fralick, Asst. Disciplinary Counsel, Denver, for complainant.

Michael V. Makaroff, Denver, for atty.-respondent.

PER CURIAM.

This is an attorney discipline case. On April 7, 1990, respondent, Nancy Lee Taylor, and assistant disciplinary counsel for the Supreme Court Grievance Committee entered into a stipulation, agreement, and conditional admission of misconduct. *See* C.R.C.P. 241.18. An inquiry panel of the grievance committee accepted the stipulation and agreement and recommended that respondent be suspended from the practice of law for eighteen months, pay restitution plus interest to a former client, file delinquent quarterly reports with the Metropolitan Lawyer Referral Service (MLRS), pay consultation charges and forwarding fees plus interest to MLRS, and be assessed the costs of the proceedings. We accept the stipulation and agreement, and conclude that the number and seriousness of the charges, when balanced against the mitigating factors presented, warrants the recommended suspension.

I.

Respondent was admitted to the bar of this court on May 15, 1981, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court in these proceedings. C.R.C.P. 241.1(b). The stipulation and agreement is based on seven counts of charged misconduct, arising from three formal complaints.

A.

*Complaint GC 89B-7*

Count I

In the stipulation and agreement, respondent admitted the following facts. On August 28, 1987, respondent was hired by Anthony Pollasky and Melanie Mutcher to defend them in a civil action filed against them by Una Kay Harper d/b/a Spectrum Design. The action sought collection of approximately $25,000 due for goods delivered and treble damages for two checks that were returned because of insufficient funds.

Respondent entered her appearance on August 28, 1987, and filed a motion for continuance of the taking of her clients' depositions, scheduled for August 31. The district court denied the motion. Pollasky and Mutcher, who live in Minnesota, failed to appear for their depositions. On October 22, 1987, counsel for plaintiff Harper sent respondent a notice rescheduling the depositions of Pollasky and Mutcher for December 2, 1987. On or about December 1, plaintiff's counsel called respondent about the depositions, and respondent told him she had not been in contact with her clients for six weeks and did not know if they would appear for their depositions. Later the same day, respondent told counsel for plaintiff that her clients could not make the trip from Minnesota, and she suggested alternate dates, but plaintiff's counsel refused to reschedule the depositions.

Respondent filed a motion to continue the depositions on December 2, 1987, but the district court denied the motion. Pollasky and Mutcher did not appear for their depositions. Plaintiff moved for sanctions, and the court granted the motion on December 29, 1987.

On December 11, 1987, plaintiff's counsel served respondent with discovery requests to which she never responded. Respondent served a request for production of documents on plaintiff's counsel on December

23, 1987. Although counsel for plaintiff filed a pretrial data certificate on December 29, respondent failed to file such a certificate on behalf of her clients, and trial was set for January 23, 1988.

On January 15, 1988, respondent filed a motion for continuance and a motion for reconsideration of the December 29 order imposing sanctions. Plaintiff's counsel filed a motion for default judgment on January 21. The district court granted the continuance, denied the motion for reconsideration, and set the case for pretrial conference and a hearing on the motion for default judgment on February 17, 1988.

At the hour set for the hearing on February 17, respondent called the court and stated that she was ill. The district court ordered that the motion for default judgment be treated as a motion for summary judgment, reset the hearing for March 17, 1988, and gave respondent until March 7 to file a response. Respondent filed her response three days late. The district court on March 17 denied the motion for summary judgment, ordered respondent to reset the pretrial conference and trial within ten days, and awarded attorney's fees of $500 against respondent's clients, to be paid within sixty days. The attorney's fees were never paid and respondent never reset the pretrial conference or trial.

Counsel for plaintiff filed a renewed motion for default judgment on April 1, 1988. Three days later, respondent filed a motion seeking clarification of the March 17 order. On April 5, 1988, the district court entered judgment by default against respondent's clients because of their failure to comply with the court's March 17 order and evasion of legitimate requests for discovery. The district court also awarded damages, costs, and attorney's fees totalling $26,894.79 against respondent's clients and allowed plaintiff to request a hearing to establish additional damages. Respondent appeared on behalf of her clients at a hearing on plaintiff's request for treble damages, and the district court concluded that plaintiff was not entitled to treble damages.

Respondent stipulated, and we agree, that her conduct violated C.R.C.P. 241.6 (grounds for lawyer discipline), as well as DR 1–102(A)(1) (a lawyer shall not violate a disciplinary rule); DR 1–102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice); DR 6–101(A)(2) (a lawyer shall not handle a legal matter without adequate preparation); DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to her); DR 7–101(A)(1) (a lawyer shall not intentionally fail to seek the lawful objectives of her client through reasonably available lawful means); DR 7–101(A)(2) (a lawyer shall not intentionally fail to carry out a contract of professional employment); and DR 7–106(C)(7) (a lawyer shall not intentionally or habitually violate any established rule of procedure or evidence).

### Count II

On May 8, 1987, Edwin A. Silva hired respondent to file an action against an automobile repair shop for breach of a warranty on repairs. After Silva had difficulty in reaching respondent over the next six weeks, respondent called Silva on July 14, 1987, and asked him to come to the office to sign the complaint. Silva did so, and respondent filed the complaint on July 21.

Silva's difficulties in communicating with respondent continued for the next six months. Respondent set the case to be tried on January 29, 1988, and so notified Silva. Early in January, respondent told Silva to see a psychiatrist to support his claim of damages for emotional distress, and Silva did so. As the trial date approached, Silva was again unable to contact respondent. On January 28, 1988, respondent and counsel for the defendant agreed to continue the trial until March 18, 1988. Respondent telephoned Silva at about 5:00 p.m. on January 28 and notified him of the continuance.

Trial data certificates were required to be filed on or about December 15, 1987. Although defense counsel's certificate was timely filed, respondent did not file one until March 16, two days before the second trial date. As this trial date approached,

Silva once again had trouble contacting respondent, and he finally went to her office on March 3. Respondent was there and made an appointment for Silva to come back in two weeks to prepare for trial. Respondent met with Silva the evening before trial.

Defense counsel filed a motion *in limine* to restrict Silva's witnesses and exclude his exhibits because of respondent's failure to file a timely trial data certificate. The trial court did not rule on the motion *in limine*, and the parties agreed to proceed solely on the testimony of the plaintiff and defendant. Respondent did not offer into evidence the estimates of repair costs that Silva had obtained to sustain his claim for damages. Respondent contends that the reason she did not offer any estimates into evidence was that she misunderstood the trial court's instructions regarding the motion *in limine*. Because respondent filed the trial data certificate late, and because she failed to offer key evidence of plaintiff's damages, Silva was awarded only $125.11. Silva believed he was entitled to all of the damages he claimed up to $5,000.

Respondent stipulated, and we agree, that her conduct violated C.R.C.P. 241.6, as well as DR 1–102(A)(1); DR 1–102(A)(5); DR 6–101(A)(2); DR 6–101(A)(3); DR 7–101(A)(1); and DR 7–101(A)(3) (a lawyer shall not intentionally prejudice or damage her client during the course of the professional relationship).

## Count III

Lorraine Loustalet, D.D.S., retained respondent in August 1987 to represent her in an action that had been transferred to county court. Dr. Loustalet was seeking to recover $750 for attorney's fees after the defendant dentist reneged on an agreement to sell Dr. Loustalet his practice. Respondent advised Dr. Loustalet that the defendant's outstanding offer of $500 to settle the case was reasonable, and that she would handle it. Respondent told Dr. Loustalet a week before the trial that she would settle the case and not to appear for trial.

Respondent took no further action. On November 6, 1987, the date set for trial, the defendant and his counsel appeared, but respondent and Dr. Loustalet did not. The trial court dismissed Dr. Loustalet's claim with prejudice, and awarded the defendant $1,000 in attorney's fees on his counterclaim. When her bank account was garnished to pay the judgment, Dr. Loustalet contacted the respondent, who agreed to reimburse her for her losses. Respondent has not yet reimbursed Dr. Loustalet.

We agree with respondent's stipulation that her conduct violated C.R.C.P. 241.6, and DR 1–102(A)(1); DR 1–102(A)(5); DR 6–101(A)(3); DR 7–101(A)(1); DR 7–101(A)(2); and DR 7–101(A)(3).

## Count IV

Respondent was hired on January 4, 1988, by Albert B. Hunter, IV, to prepare a will and possibly handle the dissolution of his marriage. Hunter instructed respondent to proceed with the dissolution, paid respondent $200, and agreed to a $100 hourly fee on January 13. Respondent filed the petition for dissolution and informational data on January 22, 1988. Hunter was unable to reach respondent for several weeks in February and March 1988. Her telephone was disconnected, and she was not at her office when he went there.

On February 12, 1988, respondent set the case for a hearing on permanent orders on September 1. However, an incident between Hunter and his wife on February 21 made the issuance of temporary orders necessary on March 14, 1988. Respondent filed an amended petition, a motion for temporary orders, a motion for custody investigation and the appointment of a guardian ad litem, and a notice to set. Pursuant to respondent's request, the trial court set a temporary orders hearing for May 23, 1988, and respondent so advised her client.

Hunter unsuccessfully tried to reach respondent on May 15, 17 and 19, but respondent called Hunter late on May 19. The temporary orders hearing was held on May 23. Respondent came to court without Hunter's file and without preparing the

financial affidavit. She also had not communicated with Hunter concerning preparation for the hearing. Nevertheless, at the contested hearing the trial court ruled in favor of Hunter on the issue of temporary support. Respondent was ordered to prepare the temporary orders and a financial affidavit within ten days.

Hunter again tried to reach respondent without success from June 2 through June 6. Respondent went on vacation June 6 and left the message on her answering machine that her office was closed. Neither the temporary orders nor the financial affidavit was filed as ordered. Hunter fired respondent by letter on June 7, 1988. Respondent replied that she would prepare his will by July 15, 1988, and enclosed blank financial forms for Hunter to complete. On August 1, 1988, Hunter received the will which he had initially hired respondent to prepare, but the will did not contain certain provisions he had requested.

Respondent filed a motion to withdraw in the dissolution of marriage proceedings, and the trial court granted the motion on August 2, 1988. When she withdrew, respondent did not notify Hunter that a pretrial conference was set for August 16, 1988. Hunter was unaware of the conference until opposing counsel called him from the courthouse, and Hunter was able to appear belatedly.

As respondent stipulated, her conduct violated C.R.C.P. 241.6 and DR 1–102(A)(1); DR 1–102(A)(5); DR 6–101(A)(2); DR 6–101(A)(3); and DR 7–101(A)(2).[1]

### B.

### *Complaint GC 89B–43*

### Count I

Respondent submitted an application for referrals from Metropolitan Lawyer Referral Service (MLRS) on April 3, 1987. The MLRS referral agreement provided that respondent would forward a uniform consultation charge of $25 to MLRS for each referral, would pay a forwarding fee of 10% for each referral generating net fees in excess of $250, and had read and agreed to the MLRS rules and regulations. MLRS certified respondent for referrals on April 16, 1987.

MLRS referred eleven cases to respondent from April to July, 1987. Three referred clients paid fees in excess of $250. Respondent did not pay the uniform consultation charge, and failed to pay MLRS the 10% forwarding fee for the clients that generated fees in excess of $250. In addition, respondent did not complete and return to MLRS the quarterly case status reports, and failed to respond to written inquiries from MLRS.

Respondent stipulated, and we agree, that her conduct violated C.R.C.P. 241.6 and DR 1–102(A)(1); DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and DR 1–102(A)(6) (a lawyer shall not engage in any other conduct that reflects adversely on her fitness to practice law).

### Count II

The Chairman of the MLRS Rules Committee on January 26, 1989, filed a request for investigation with the office of Disciplinary Counsel of the Supreme Court. *See* C.R.C.P. 241.9. A copy of this request, along with a cover letter advising her to respond within twenty days was mailed to respondent by certified mail on January 26, 1989. C.R.C.P. 241.10(a). The envelope was returned marked "UNCLAIMED." On February 16, 1989, the office of Disciplinary Counsel mailed a copy of the request for investigation to respondent by regular mail, and it was not returned.

The office of Disciplinary Counsel mailed a letter to respondent on March 16, 1989, informing her that her failure to cooperate

---

1. Assistant disciplinary counsel stipulated that she did not believe there was clear and convincing evidence that respondent also violated DR 9–102(B)(3) (a lawyer shall maintain complete records of all funds, securities, and other properties of a client coming into the lawyer's possession, and render appropriate accounts to her client regarding them), because respondent kept records of Hunter's account and the time she spent on the case, and provided Hunter with those records when she withdrew.

in this matter was itself a ground for discipline. There was no reply from respondent. An investigator called respondent and left a message on her answering machine on March 22, 1989. Again, there was no response.

As respondent stipulated, her conduct violated C.R.C.P. 241.6(7) (failure to respond to a request from the grievance committee without good cause shown constitutes a ground for lawyer discipline).

## C.

### Complaint GC 90B-6

Mary Jane Hodgkin retained respondent to recover for damages incurred at a rental property Hodgkin owned. Respondent neglected the case and failed to commence an action on behalf of Hodgkin. Respondent states that she prepared a summons and complaint, attempted to obtain service, but did not follow through on the matter. Respondent failed to return numerous telephone calls from Hodgkin.

We agree with respondent that her conduct violated C.R.C.P. 241.6, as well as DR 1–102(A)(1) and DR 6–101(A)(3).

## II.

Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (*ABA Standards*), suspension is generally an appropriate sanction when "(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." *ABA Standards* 4.42.

As aggravating factors, respondent engaged in a pattern of misconduct and multiple offenses. *ABA Standards* 9.22(c), (d). In addition, respondent initially failed to cooperate with the grievance committee. *Id.* 9.22(e).

We have also considered the following factors in mitigation. Respondent has no prior disciplinary record. *Id.* 9.32(a). There is evidence that during the period of time in which the complaints arose respondent was suffering from personal and emotional problems, including severe depression. *Id.* 9.32(c), (h). In addition, a number of commendatory letters have been submitted on respondent's behalf. *Id.* 9.32(g).

Weighing these aggravating and mitigating factors, we conclude that the recommended eighteen-month suspension is reasonable and warranted, and we accept the stipulation and agreement and the recommendations of the inquiry panel of the grievance committee.

## III.

It is hereby ordered that Nancy Lee Taylor be suspended from the practice of law for eighteen months, effective thirty days after the issuance of this opinion. *See* C.R.C.P. 241.21(a). It is further ordered that Taylor pay restitution to Dr. Lorraine Loustalet in the amount of $1,500 plus interest at the rate of 9% per annum from November 6, 1987, until paid; that Taylor file the delinquent quarterly reports with MLRS and pay MLRS the consultation charges and forwarding fees, with interest from the dates the moneys were due; and that Taylor pay the costs of this proceeding in the amount of $1,579.07 within ninety days after the announcement of this opinion. Costs shall be paid to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80203. Taylor shall not be reinstated until after she has complied with C.R.C.P. 241.22(b), has paid the costs and restitution as ordered, and has complied with the provisions of this opinion regarding filing reports and making payments to MLRS.

VOLLACK, J., does not participate.